UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JACOB C. BRIER,

    Plaintiff,

      v.

BRIDEGROOM, et al.,

    Defendants.

CAUSE NO. 3:25-CV-402-GSL-AZ

## OPINION AND ORDER

Jacob C. Brier, a prisoner without a lawyer, filed a complaint and a motion seeking a preliminary injunction. ECF 1; ECF 6. His motion seeking a preliminary injunction was denied, and this case was stayed pending screening. ECF 7.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Brier was housed in the Westville Control Unit ("WCU") from February 2024 until he was transferred to Newcastle Correctional Facility around July 2025. ECF 10; ECF 11. He suffers from a serious mental illness ("SMI") and has a history of substance

abuse, including numerous overdoses. While incarcerated at the WCU, he sought help addressing his substance abuse problem.

Brier's Communication with Ms. Peterson

On November 8, 2024, Brier met Ms. Peterson, the Director of Addiction Recovery Services, in response to his request for help with substance abuse. She reviewed Brier's medical history, including a recent overdose that occurred approximately one month prior to their meeting. She agreed with Brier that he needed help, but she allegedly refused to recommend that his substance abuse problem be treated with medication. In her opinion, "using drugs to treat someone with a drug problem is asinine." ECF 1 at 4. The Recovery While Incarcerated ("RWI") program accommodates some inmates with mental illness, but she allegedly did not refer Brier to the program because of his mental illness. Brier asked about other treatment, and he was told, "no, you need to shake this addiction yourself[. I]f your [sic] really serious about getting clean and fear for your life you will stop[.] Self preservation is the strongest instinct a human has." *Id.*

Brier is suing Ms. Peterson for violating the Americans with Disabilities Act ("ADA"), being deliberately indifferent to his medical needs, and violating his rights under the Equal Protection Clause.[1]

---

[1] If a pro se litigant expressly states the legal theory he is pursuing, the court is not required to analyze whether his allegations might state a claim under another legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the court analyzes Brier's claims against Ms. Peterson only under the theories he has identified.

*ADA Claim Against Ms. Peterson*

Brier asserts that his rights under the ADA were violated when Ms. Peterson discriminated against him by denying him treatment for his substance abuse problem because he suffers from mental illness. A claim under the ADA cannot be brought against individual employees. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 & n.2 (7th Cir. 2012). Because the ADA does not permit a claim against an individual employee, Brier cannot proceed against Ms. Peterson on this claim.

*Inadequate Medical Care from Ms. Peterson*

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a

substantial departure from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the decision on such a

judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has

explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care,"

*Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they

entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see*

*also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment

does not require that prisoners receive unqualified access to health care."). Rather, they

are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*,

112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment

decisions unless there is evidence that no minimally competent professional would

have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and

quotation marks omitted). This standard "reflects the reality that there is no single

'proper' way to practice medicine in a prison, but rather a range of acceptable courses

based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th

Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough

that a medical professional is mistaken in his or her judgment. As noted above, the

deliberate indifference standard requires something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

Here, Brier argues that Ms. Peterson was deliberately indifferent to his needs because she did not recommend that he receive medication to help manage his substance abuse and did not recommend him to the RWI program. Ms. Peterson explained that she did not feel he would benefit from treating his drug addiction with medication. It cannot be plausibly inferred from the facts alleged in Brier's complaint that Ms. Peterson failed to use her medical judgment when she reached this conclusion. Brier also alleges that Ms. Peterson refused to offer any alternative assistance with his substance abuse problem whatsoever, instead telling him he needed to "shake this addiction yourself." ECF 1 at 4. To the extent that Brier alleges that Ms. Peterson conceded that he needed help but failed to provide any help whatsoever, he may proceed against her on an Eighth Amendment claim.

*Equal Protection Claim Against Ms. Peterson*

Brier contends that Ms. Peterson violated the Equal Protection Clause when she treated him differently than other inmates by denying him treatment for his substance abuse because he had a mental illness. "[L]itigants should use the part of the Constitution that most directly addresses their concerns." *Conner v. Schwenn*, 821 F. App'x 633, 636 (7th Cir. 2020); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (constitutional claims must be analyzed under the most "explicit textual source of

constitutional protection"). Brier's allegations that Ms. Peterson denied him treatment

for his substance abuse problem is more appropriately analyzed under the Eighth

Amendment as an inadequate medical treatment claim. The court has permitted him to

proceed on that claim. Brier can have "but one recovery" against Ms. Peterson, *Jaros v.*

*Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), and the case "gains nothing by

attracting additional constitutional labels." *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir.

2005); *see also Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988) (affirming

dismissal of equal protection claim that amounted to "a mere rewording" of another

constitutional claim contained in the complaint).

Brier's Subsequent Communications With Ms. Rodriguez

Thereafter,[2] Brier met the new mental health provider, Ms. Rodriguez. She

explained that the Mental Health Director[3] told her that that Brier's Serious Mental

Illness ("SMI") status has been removed because he filed grievances and a lawsuit about

being in solitary confinement for an extended period when he suffers from a serious

mental illness.[4] This decision was allegedly made by Centurion "higher ups," Warden

Jason Smiley, and individuals at the IDOC's central office. Ms. Rodriguez said that she

was directed to "basically falsify [Brier's] records" and write that Brier was stable so

---

[2] Brier does not provide a date.

[3] While Brier does not identify her by name, this appears to be a reference to Director
Bridegroom.

[4] This appears to be a reference to *Brier v. Smiley*, 3:24-CV-1006-GSL-JEM (filed Dec. 26, 2024).

6

that his lawsuit complaining about being placed in segregation despite having a serious mental illness would fail. ECF 1 at 6.

Based on this conversation, Brier is suing Ms. Rodriguez, Warden Jason Smiley, Centurion Health of Indiana, Director Bridegroom, and the Indiana Department of Correction ("IDOC"). He is suing these defendants for "conspiracy to deprive [Brier] of his constitutional rights under the Americans with Disabilities Act, Equal Protection, Retaliation, and Deliberate Indifference to serious medical needs." ECF 1 at 6-7.[5]

*Allegations of a Conspiracy*

Brier alleges that there was a conspiracy to strip him of his SMI designation in order to prevail in another legal matter. But, "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Vill. Of Elk Grove*, 211 F.3d. 416, 423 (7th Cir. 2000). "Section 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. A supervisor can also be held liable

---

[5] Once again, because Brier has specified the legal theories he is pursuing, the court will limit its analysis to those theories. *See Larry*, 799 F. App'x at 416.

7

if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Thus, the court will consider whether Brier's complaint has alleged facts that permit a plausible inference that these defendants violated the ADA, the Eighth Amendment's requirement that inmates receive constitutionally adequate medical care, the First Amendment's prohibition against retaliation, his rights under the Equal Protection Clause.

*Constitutional Claims Against Centurion Health of Indiana*

A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). "At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Brier has not alleged that his SMI designation was stripped due to a widespread policy, custom, or practice of Centurion Health of Indiana. Therefore, he may not

8

proceed on any Eighth Amendment, First Amendment, or equal protection claims against Centurion Health of Indiana.

*Constitutional Claims against the IDOC*

Brier's claims arising under the Eighth Amendment, First Amendment, or Equal Protection Clause must be brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for constitutional violations by people acting under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The IDOC is an arm of the state and, as such, cannot be sued in federal court under 42 U.S.C. § 1983. *See Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015). States and state agencies are not "persons" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). Therefore, Brier cannot proceed on any Eighth Amendment, First Amendment, or Equal Protection claims against the IDOC.

*Claims Pursuant ADA*

As already noted, a claim under the ADA cannot be brought as against individual employees. Any claim under these statutes is a claim against the state agency itself and must be brought against the state agency itself. *See Jaros*, 684 F.3d at 670. Therefore, Brier may not proceed against Centurion Health of Indiana, Ms. Rodriguez, Warden Jason Smiley, or Director Bridegroom on an ADA claim.

As to the IDOC, Brier has not alleged facts from which it can be plausibly inferred that his rights under the ADA were violated. He alleges only that he was

9

stripped of the SMI designation. He does not allege facts suggesting discrimination, a denial of access to services, or failure to accommodate a disability; he alleges only that his designation was changed without explaining how that change violated the ADA. Therefore, he cannot proceed on an ADA claim against the IDOC.

### Constitutionally Inadequate Medical Care

Brier alleges that his SMI label was stripped from him, but he does not allege that he was deprived of any necessary medical attention due to that change in designation. Therefore, he has not alleged an Eight Amendment claim for deliberate indifference to his serious medical needs against Ms. Rodriguez, Warden Jason Smiley, Director Bridegroom.

### Retaliation

To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). Brier alleges that his SMI designation was removed without justification because he filed grievances and a lawsuit about being held in long term segregation when he suffers from a serious mental illness. Giving Brier the benefit of all favorable inferences, as the court must at this stage of the case, he has plausibly alleged

10

a retaliation claim against Ms. Rodriguez, Director Bridegroom, and Warden Jason Smiley.

*Equal Protection*

As already explained with reference to Brier's allegations against Ms. Peterson, "litigants should use the part of the Constitution that most directly addresses their concerns." *Conner*, 821 F. App'x at 636; *see also Graham*, 490 U.S. at 395. Brier's allegations that Ms. Rodriguez, Warden Jason Smiley, and Director Bridegroom violated the Equal Protection Clause when they stripped him of his SMI designation because he filed grievances and a lawsuit are more appropriately analyzed as retaliation under the First Amendment. The court has permitted him to proceed on this claim. Brier can have "but one recovery" against Ms. Rodriguez, Warden Jason Smiley, and Director Bridegroom, *Jaros*, 684 F.3d at 672, and the case "gains nothing by attracting additional constitutional labels." *Conyers*, 416 F.3d at 586.

For these reasons, the court:

(1) LIFTS the STAY (ECF 7);

(2) GRANTS Jacob C. Brier leave to proceed against Ms. Peterson in his individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical need for treatment of his substance abuse problem when she refused to provide Brier with any treatment whatsoever on November 8, 2024, in violation of the Eighth Amendment;

11

(3) GRANTS Jacob C. Brier leave to proceed against Ms. Rodriguez, Director Bridegroom, and Warden Jason Smiley in their individual capacities for compensatory and punitive damages for retaliating against Brier for filing grievances and a lawsuit by stripping him of his SMI designation without justification, in violation of the First Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Centurion Health of Indiana and the Indiana Department of Correction;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Jason Smiley at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Ms. Peterson, Ms. Rodriguez, and Director Bridegroom, at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(8) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Ms. Peterson, Ms. Rodriguez, Director Bridegroom, and Warden Jason Smiley to respond, as provided for in the

12

Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which

the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 14, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT